# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Devion Gentry, )
    Plaintiff, )
  )
v. ) 1:17cv766 (LO/IDD)
  )
Virginia Department of Corrections, et al., )
    Defendants. )

## MEMORANDUM OPINION

Devion Gentry, a Virginia inmate proceeding pro se, has filed a complaint, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that his rights were violated when officers at the Nottoway Correctional Center forcibly shaved his beard. Dkt. No. 1. Defendants have filed a Second Motion for Summary Judgment, along with a supporting brief, exhibits, and the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Dkt. Nos. 27-29. Plaintiff filed an unverified general objection to defendants' motion, however, his complaint is verified.[1] Dkt. Nos. 1, 35. For the following reasons, defendants' Motion for Summary Judgment will be granted and this matter will be dismissed.

### I.

The record on summary judgment establishes the following. On July 7, 2016, plaintiff was transferred into Virginia Department of Corrections ("VDOC") custody and the intake process took place at Nottoway Correctional Center ("NCC"). Defs.' MSJ, Bateman Aff. ¶ 4.

---

[1] "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (citations omitted).

At the time of intake into VDOC, every inmate is given an order to comply with VDOC Operating Procedure ("VDOC OP") 864.1.[2] Id. Robinson Aff. ¶ 11. Prior to December 2016, this meant that all inmates were treated alike, regardless of their religious affiliation or personal preference, and reasonable force was authorized to the extent necessary to bring inmates into compliance with VDOC OP 864.1. Compl. ¶¶ 18, 20; Defs.' MSJ, Robinson Aff. ¶ 12. As of December 28, 2016, inmates who refuse to comply with the grooming policy for religious reasons are treated like any other inmate who refuses to comply with the grooming policy. Defs.' MSJ, Robinson Aff. ¶ 13, Enc. C. In other words, force is no longer used to bring them into compliance. Id.

During the intake process on July 7, 2016, plaintiff refused to have his beard shaved for religious reasons. Compl. ¶ 17. VDOC employees tried to reason with plaintiff, but he told them that they were trying to humiliate him and that he wanted to be placed in segregation instead. Id. ¶¶ 18, 20-23. Specifically, plaintiff states he could have been placed in the VHU. Id. ¶ 79. Instead, plaintiff was told that he would not be placed in segregation without first complying with VDOC OP 864.1. Id. ¶¶ 18, 20.

---

[2] VDOC OP 864.1 sets forth grooming standards for all VDOC inmates to facilitate the identification of offenders and promote safety, security and sanitation. Defs.' MSJ, Robinson Aff. ¶ 4. Thus, hair styles and beards that could conceal contraband, promote identification with gangs, create health, hygiene, or sanitation hazards, or that could significantly compromise the ability to identify an offender are not allowed. Id. For example, prisoners with longer beards can easily change their appearance, which hinders the ability to rapidly identify prisoners, which is necessary for the orderly operation of VDOC facilities. Id. ¶ 7. In addition, shorter hair makes it easier for staff to search for contraband which helps maintain the health and safety of prisoners and prison staff. Id. ¶¶ 5-6. VDOC allows inmates who are consistent violators of VDOC OP 864.1 to reside in the Grooming Standards Violator Housing Unit ("VHU") at Wallens Ridge State Prison. Id. ¶ 10. Plaintiff's assertion that VDOC OP 864.1 is based on VDOC's "look preference" rather than safety concerns, Compl. ¶ 77, is not based on personal knowledge.

2

When it became evident that plaintiff was not going to change his mind, Major Bateman authorized the use of the minimum amount of force necessary to bring plaintiff into compliance with VDOC OP 864.1. Id. ¶¶ 24-25; Defs.' MSJ, Bateman Aff. ¶ 6. Sergeant Swann entered plaintiff's cell with a "[taser] shield" which he used to push plaintiff to the ground, although he never activated the shield's electric current.³ Compl. ¶ 26-27; Defs.' MSJ, Bateman Aff. Encl. A. Once on the ground, Sergeant Swann twisted plaintiff's right hand behind plaintiff's back, Lieutenant Williams twisted plaintiff's left arm behind plaintiff's back, and they handcuffed plaintiff and applied leg irons. Compl. ¶¶ 29-31. Plaintiff peacefully resisted. Id. ¶ 80. Plaintiff was escorted 25 feet to the barber chair where Sergeant Swann placed his knee on plaintiff's handcuffs with his full body weight and held plaintiff's head. Id. ¶ 34; Defs.' MSJ, Bateman Aff. ¶ 6. Plaintiff's legs were past the foot rest of the chair and his arms were behind the back of the chair. Compl. ¶ 33. Plaintiff continued to resist staff. Defs.' MSJ, Bateman Aff. ¶ 6, Encl. A. While Sergeant Swann forced plaintiff's head into different positions, Sergeant Williams shaved plaintiff's beard to ¼ inch length. Compl. ¶¶ 35-37; Defs.' MSJ, Bateman Aff. ¶ 6, Encl. A. Medical staff then arrived to evaluate plaintiff, however, he was not able to answer at first because Sergeant Swann had his knee on plaintiff's cuffed wrists. Compl. ¶ 39. Once Sergeant Swann moved, plaintiff stated he did not think he was injured, however, the medical staff noted an abrasion to his left wrist due to his resisting staff, and a ½ inch laceration on his right forearm. Id. ¶ 40; Defs.' MSJ, Bateman Aff. ¶ 7, Enc. A. Plaintiff's picture was taken, and then he was

---

³ In his verified complaint, plaintiff states that he was forced to the ground when he could no longer "take the electrical shock" from the shield. However, this allegation is contradicted by the contemporaneously made incident report which establishes that the shield was never activated during the incident in question. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

3

escorted to segregation, which was unnecessary because his beard had been trimmed, and he was uncuffed. Compl. ¶¶ 42, 47, 76.

As of June 14, 2017, other inmates housed in the VHU, such as those from the Virgin Islands, were not forced to cut their hair upon intake into VDOC. Id. ¶ 55. In fact, of the thirty-eight inmates in the VHU as of June 14, 2017, only the four other inmates who refused to cut their hair for religious reasons were forced to comply with VDOC OP 864.1.[4] Id. ¶¶ 56, 69. There is no reason for male inmates to have their hair length restricted to one inch and their beard length restricted to ¼ inch because (1) inmates' hair is searched no matter its length; (2) male inmates can grow mustaches longer than ¼ inch in length; and (3) female inmates are allowed to have hair longer than one inch. Id. § 71-74.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences

---

[4] These inmates also went through the intake process at NCC.

4

from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed, and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.

#### A. First Amendment and RLUIPA Claims

Plaintiff first claims that defendants violated his rights under the First Amendment and RLUIPA when they forced him to shave his beard because plaintiff grew his beard for religious reasons. Thus, plaintiff claims, defendants did not allow him to practice his religion and they did not use the least restrictive means to further a compelling government interest.

#### i. RLUIPA

The Fourth Circuit has held that plaintiffs cannot recover damages under RLUIPA against defendants when sued in their official capacity. Madison v. Virginia, 474 F.3d 118 (4th Cir. 2006) (Madison II). The Fourth Circuit also recently held that "when invoked as a spending clause statute, RLUIPA does not authorize a claim for money damages against an official sued in her individual capacity." Rendelman v. Rouse, 569 F.3d 182, 184.

5

Congress passed RLUIPA "by relying on its Spending and Commerce Clause powers ...." Madison v. Riter, 355 F.3d 310, 315 (4th Cir. 2003). Plaintiff does not specify in his complaint whether he invokes RLUIPA under the Spending Clause or the Commerce Clause; however, it is clear that "[t]he Virginia Department of Corrections is a state agency that receives federal financial assistance." Madison II, 474 F.3d at 124. Accordingly, it can reasonably be inferred that plaintiff invoked RLUIPA pursuant to the Spending Clause. See Rendelman, 569 F.3d 182; see also Stewart v. Beach, 701 F.3d 1322 (10th Cir. 2012) (analyzing the constitutionality of RLUIPA as an exercise of the Spending Clause as related to a prisoner's claim); Nelson v. Miller, 570 F.3d 868 (7th Cir. 2009) (same); Van Wyhe v. Reisch, 581 F.3d 639 (8th Cir. 2009) (same); Benning v. Georgia, 391 F.3d 1299 (11th Cir. 2004) (same). Therefore, plaintiff is not entitled to recover monetary damages from defendants in either their individual or official capacities.

The only injunctive relief plaintiff seeks in his complaint is "a preliminary and permanent injunction ordering VDOC to send [plaintiff] to where [he] can practice [his] religion fully and grow [his] beard." Specifically, plaintiff asks to be transferred to "Delaware State Prisons, North Carolina State Prisons, or [to federal custody]." Because plaintiff is in VDOC custody, it is reasonable to infer that he is in custody pursuant to a Virginia state court conviction and cannot be transferred out of VDOC custody as requested. In addition, plaintiff is currently in a facility where is he able to fully grow his beard, making his request for injunctive relief moot. For the foregoing reasons, plaintiff's RLUIPA claim will be dismissed.

### ii. First Amendment – Free Exercise

Determining whether a policy violates an individual's right to freely exercise his religion requires determining whether the regulation imposes a substantial burden on the exercise of

religion, and, if so, whether that burden is justified by a compelling state interest. Hernandez v. Comm'r., 490 U.S. 680, 699 (1989). The question of whether a plaintiff sincerely holds a "religious" belief does not "turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 715 (1981). A plaintiff must, however, make a threshold showing that he sincerely holds his religious belief. Cf. id. at 717 (finding that the "narrow function" of a court reviewing a Free Exercise challenge is to determine whether the plaintiff took a specific action because of his religious beliefs). The question of whether a regulation imposes a "substantial burden" has been framed in a number of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas, 450 U.S. at 717-18, and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

However, prisoners do not maintain the same degree of First Amendment rights as the general public. Specifically, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Accordingly, an inmate does not have the same protection from restrictions on his rights to practice his religion as do members of the general public; thus, prison officials may enact restrictions on an inmate's ability to practice his religion, as long as the official can show that the restrictions are reasonably related to legitimate penological interests. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 350

7

(1987) (rejecting the idea that prison staff must prove that their chosen method of running an institution is the least burdensome to an inmate's First Amendment rights).

> In Turner v. Safley, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Turner Court laid out a four-factor test for determining whether a prison regulation that infringes on an inmate's First Amendment rights is nonetheless reasonable and therefore constitutionally valid. First, is there "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it[?]" Id. Second, are there "alternative means of exercising the right that remain open to prison inmates[?]" Id. at 90, 107 S.Ct. 2254. Third, what is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[?]" Id. And finally, do there exist "obvious, easy alternatives" suggesting that the regulation is "an 'exaggerated response' to prison concerns[?]" Id. Under this framework, "[t]he burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015) (alterations in original).

This court previously held that a prior version of VDOC OP 864.1 that allowed for the use of force to bring inmates into compliance did not violate an inmate's right to freely exercise their religion. DeBlasio v. Johnson, 128 F. Supp. 2d 315 (E.D. Va. 2000), aff'd sub nom. Madison v. Johnson, 12 F. App'x 149 (4th Cir. 2001), and aff'd, 13 F. App'x 96 (4th Cir. 2001), and aff'd sub nom. Perry v. Johnson, 13 F. App'x 158 (4th Cir. 2001); see also McClelland v. Sheriff's Deputy, No. 2:00-CV-807, 2001 WL 34826228, at *3 (E.D. Va. Mar. 19, 2001) (dismissing inmate's free exercise challenge to previous version of VDOC OP 864.1 for failure to state a claim because it "meets the O'Lone test"); Roberts v. Ozmint, 2006 WL 2303183, at *2 (D.S.C. Aug. 8, 2006), aff'd, 213 F. App'x 190 (4th Cir. 2007) (holding that South Carolina's grooming policy did not violate inmate's First Amendment rights because "use of force to secure

8

compliance with an otherwise valid prison policy does not impact the Fourth Circuit's analysis as it relates to the First Amendment").[5] In DeBlasio, this court found that

> [t]he record is clear that [the previous version of VDOC OP 864.1] was enacted to suppress contraband, limit gang activity, maintain discipline and security, and prevent inmates from quickly changing their appearance. Second, plaintiffs do not dispute that they are permitted to practice other tenets of their religions. Finally, the record shows that searches of inmates with long hair are less effective and more time consuming than searches of inmates with short hair, and accommodating plaintiffs' religious practices may therefore result in increased contraband and less safety for guards, even if it is not entirely clear from the record this would result in the need to hire additional guards. Accordingly, [the previous version of VDOC OP 864.1] passes muster under the O'Lone test ....

128 F. Supp. 2d at 323.

Here, the record on summary judgement establishes that VDOC OP 864.1 facilitates the identification of offenders and promotes safety, security, and sanitation. In addition, plaintiff has not alleged that he cannot practice other tenants of his religion. Finally, it is undisputed that longer hair and beards are more difficult to search for both time and safety reasons. Accordingly, the first three Turner factors weight in favor of defendants. The existence of the VHU and the fact that force is no longer used on inmates who refuse to comply with the grooming policy during the intake procedure for religious reasons tend to establish that there was an obvious or easy alternative to the use of force to bring plaintiff into compliance. However, the weight of the Turner factors establish that VDOC OP 864.1 is reasonably related to a legitimate penological interest. See Smith, 578 F.3d at 252 ("Of course, due deference must be given to the experience and expertise of prison and jail administrators in establishing necessary

---

[5] It is noted that, since these cases were decided, the Fourth Circuit held that a South Carolina Department of Corrections grooming policy that allowed for use of force to bring inmates into compliance posed a substantial burden on the exercise of religion. Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). However, Smith analyzed the grooming policy under RLUIPA, not the First Amendment, and thus its remaining analysis is inapplicable.

regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources. Security concerns deserve particular sensitivity.") (internal quotation marks and citations omitted). Thus, plaintiff's Free Exercise Clause claim will be dismissed.

### iii. First Amendment – Freedom of Speech and Expression

Plaintiff asserts that VDOC OP 864.1 violates his First Amendment right to free speech and expression because his beard identifies him as a Sunni Muslim. "[I]t is well established that a prison rule that impinges on an inmate's constitutional rights is valid 'if it is reasonably related to legitimate penological interests.'" Altizer v. Deeds, 191 F.3d 540, 547 (4th Cir. 1999) (quoting Turner, 482 U.S. at 89). For the reasons stated above, the record on summary judgment establishes that VDOC OP 864.1 is reasonably related to the legitimate penological interests of safety, security, and health. Therefore, plaintiff's free speech and expression claim will be dismissed.

### B. Fourth Amendment Claim

Plaintiff's second claim is that his right to be free from unreasonable searches and seizures was violated by defendants because they did not have probable cause to seize his beard and because they illegally seized him by placing him in segregation.

"[P]risoners retain an interest in some degree of bodily privacy and integrity ...." King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016).

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.

Id. at 214 (internal quotation marks and citations omitted). "Under Wolfish, a court is to consider the following factors to determine the reasonableness of the search: the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 214–15 (citation omitted).

Assuming, without deciding, that the trimming of plaintiff's beard was a seizure within the meaning of the Fourth Amendment, such seizure was reasonable under the Wolfish factors. First, the scope of the intrusion was minimal as defendants only trimmed plaintiff's beard and it was not permanent since plaintiff's beard has grown back. Second, while plaintiff was physically forced to have his beard trimmed, the manner of the seizure posed minimal risk of injury to plaintiff and was part of the intake procedure that each inmate went through when entering VDOC custody. Third, the seizure was conducted due to security and health concerns, both compelling justifications. Finally, the seizure took place in the barber's chair. Thus, to the extent the trimming of plaintiff's beard was a seizure, it was reasonable and did not violate plaintiff's Fourth Amendment rights.

As to plaintiff's claim that he was seized in violation of his Fourth Amendment rights when he was placed in segregation,

> [a] Fourth Amendment seizure requires "a governmental termination of freedom of movement through means intentionally applied." Brower v. Cnty. of Inyo, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). ...
>
> The few cases to discuss seizure claims by those already confined suggest that the "freedom of movement" and "protected liberty interest" inquiries overlap. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.2000) ("[B]ecause Plaintiff had no protected liberty interest in not being confined in the SHU, he fails to state a Fourth Amendment claim."); Leslie v. Doyle, 125 F.3d 1132, 1135–36 (7th Cir.1997) ("We see no reason ... why a prisoner's liberty interest under [the Search and Seizure and Due Process Clauses] would differ.").

11

Ortega v. U.S. Immigration & Customs Enf't, 737 F.3d 435, 441 (6th Cir. 2013). Thus, plaintiff's Fourth Amendment rights would only have been violated if his segregation imposed atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 486 (1995) (protected liberty interests are implicated when a seizure "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Plaintiff was placed in segregation after his beard was trimmed for failure to obey an order. Placement in segregation is not an atypical or significant hardship on an inmate, therefore, plaintiff's Fourth Amendment rights were not violated, and these claims will be dismissed. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently."); see also Hollins v. Curtin, No. 1:13-CV-8, 2014 WL 320211, at *16 (W.D. Mich. Jan. 29, 2014) ("Thus, transferring him from one area of the prison to a more restrictive area did not constitute a 'seizure' under the Fourth Amendment, and did not require a warrant or probable cause.).

**C. Due Process Claim**

Plaintiff's third claim is that his rights under the Due Process Clause were violated because (1) he was not screened before having his beard cut off, depriving him of "the liberty to grow his hair," (2) he should not have been placed in segregation once his beard was shaved off; and (3) he did not have a hearing prior to being placed in segregation, depriving him of the

ability to "exercise, order food items [from the] commissary, watch T.V.," and "move around much" because he was in a small cell.[6]

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. The first step in analyzing a Due Process Clause claim is to establish whether there is a liberty interest implicated within the meaning of the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 223–24 (1976) ("The initial inquiry is whether the transfer of respondents from Norfolk to Walpole and Bridgewater infringed or implicated a 'liberty' interest of respondents within the meaning of the Due Process Clause.").

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483–84.

Plaintiff's claims that his due process rights were violated because he should not have been placed in segregation once his beard was shaved and could not grow a beard, exercise, buy food from the commissary, watch television, or have more space to move around in his cell, must fail because plaintiff had no liberty interest in any of those activities. In fact, they represent nothing more than common incidents of prison life. Gaston, 946 F.2d at 343; McClelland v. Sheriff's Deputy, 2001 WL 34826228, at *6 (E.D. Va. Mar. 19, 2001) ("Plaintiff's forced grooming after initial intake to the prison is not 'atypical and significant hardship' and is thus not

---

[6] Plaintiff raises claims under the Fifth and Fourteenth Amendments; however, because the Fifth Amendment Due Process Clause applies only to the federal government, rather than to states, and none of the defendants are federal government actors, plaintiff's due process claims will only be analyzed as arising under the Fourteenth Amendment.

a violation of any protected liberty interest."). Accordingly, plaintiff's due process claim will be dismissed.

### D. Eighth Amendment Claims

Plaintiff claims that defendants were deliberately indifferent to his safety and well being by using excessive force. Although defendants separate this claim into a deliberate indifference claim and an excessive force claim, because plaintiff's allegations that his Eighth Amendment rights being violated are all based on the use of force by defendants, even construing the complaint liberally, it appears that plaintiff is only raising an Eighth Amendment claim based on the use of excessive force.

To establish an Eighth Amendment claim that a defendant used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Id. at 9.

> We evaluate whether [defendant] acted maliciously or "wantonly" by applying a non-exclusive, four-factor balancing test:
>
> (1) the need for the application of force;
> (2) the relationship between the need and the amount of force that was used;
> (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and
> (4) any efforts made to temper the severity of a forceful response.

Thompson v. Commonwealth of Virginia, 878 F.3d 89, 99 (4th Cir. 2017) (citation omitted).

Here, the record establishes that the use of force was used a part of a good faith effort to maintain discipline. Plaintiff was ordered to comply with the grooming policy but refused. Thus, there was a need for the application of force to bring plaintiff's into compliance with

14

VDOC OP 864.1. In addition, the defendants only used the amount of force necessary to bring plaintiff to the barber chair and trim his beard. Finally, once defendants were done trimming his beard, he was escorted to segregation and the use of force terminated. Accordingly, the use of force was not excessive, and plaintiff's Eighth Amendment claim will be dismissed.

### E. Equal Protection Claim

Plaintiff's fifth claim is that he was denied his rights under the Equal Protection Clause because (1) the only people who were forced to cut their hair were "religious people" and inmates from the Virginia Islands were not forced to cut their hair during initial intake into VDOC; and (2) VDOC has different grooming standards for male and female inmates.

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors and ensures that all similarly situated individuals will be treated in the same way. U.S. Const. amend. XIV. To succeed on an equal protection claim, a plaintiff must show that (1) he was treated differently from others, (2) who were similarly situated, and (3) that this unequal treatment was the result of intentional or purposeful discrimination. See Plyer v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff claims that he was treated differently from nonreligious inmates, including inmates from the Virgin Islands, because the only inmates who were forced to cut their hair during the intake process were "religious people." Plaintiff has pled himself out of stating a due process claim. By alleging that all other inmates who were similarly situated to him – inmates who refused to comply with the grooming policy for religious reasons – were treated the same – they were forced to cut their hair – plaintiff has failed to establish a due process claim.

Plaintiff also asserts that he, and all male inmates, are treated differently from female inmates. However, this court has previously upheld VDOC's grooming policy against such a

15

challenge. DeBlasio, 128 F. Supp. 2d at 328 ("DOP 864 survives an equal protection challenge based on differing standards for males and females."). Accordingly, plaintiff's Equal Protection claims will be dismissed.

## IV. Conclusion

Defendants have established that they are entitled to summary judgment as to plaintiff's claims. Accordingly, defendants' Second Motion for Summary Judgment will be granted and this matter will be dismissed. An appropriate Order shall issue.

Entered this 28th day of May 2019.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge